UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARK ANTHONY JONES, JR., #894464,

        Petitioner,

                                   CASE NO. 2:16-CV-14121

v.                                 HONORABLE PAUL D. BORMAN

CATHERINE BAUMAN,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, BUT GRANTING A CERTIFICATE OF APPEALABILITY AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.    Introduction**

      This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Mark Anthony Jones, Jr. ("Petitioner") was convicted of first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), armed robbery, Mich. Comp. Laws § 750.529, carjacking, Mich. Comp. Laws § 750.529a, entering without breaking, Mich. Comp. Laws § 750.111, carrying a concealed weapon, Mich. Comp. Laws § 750.227, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, following a jury trial in the Genesee County Circuit Court.  He was sentenced to 40 to 60 years imprisonment on the murder conviction, a concurrent terms of 23 years 9 months to 38 years 4 months

on the armed robbery and carjacking convictions, concurrent terms of 2 to 5 years imprisonment on the entering without breaking and concealed weapons convictions, and a consecutive term of 2 years imprisonment on the felony firearm conviction in 2014.

In his pleadings, Petitioner raises claims concerning the voluntariness of his confession to police, the admission of other acts evidence, the prosecution's due diligence in attempting to locate a witness and the admission of that witness's prior preliminary examination testimony, and the validity of his sentence. For the reasons set forth, the Court denies the petition for a writ of habeas corpus. The Court, however, grants a certificate of appealability on Petitioner's claim concerning the voluntariness of his confession and grants him leave to proceed in forma pauperis on appeal.

## II.     <u>Facts and Procedural History</u>

Petitioner's convictions arise from the shooting death and robbery of an elderly woman at her home in Flint, Michigan in November, 2010. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> On November 17, 2010, 73–year–old Merlyne Wray's son-in-law came to visit her during his lunch break and found her asleep in her chair. Upon further examination, however, he realized that Merlyne

was dead. He immediately called 911 and his wife. They noted that Merlyne's white Chevy Malibu was missing and that her home had been somewhat ransacked. Merlyne kept a clean and tidy home, but the drawer next to the chair she was sitting in had been taken out and papers were strewn about. Both bedrooms had also been disturbed. In fact, Merlyne had been shot.

Tips from neighbors led police to 2718 Raskob where police recovered Merlyne's Malibu. The house itself was abandoned, but additional tips led police to 2702 Raskob where several individuals who were seen around the car were located. Officers watched individuals coming and going from the house. One of the individuals whom officers hoped to question ran into a home at 2712 Sloan. The occupants on Sloan gave consent to search the home and officers found defendant lying in a bed. Defendant and several others were arrested and interviewed.[2] Defendant had several cell phones in his possession—one for 275–8517. Officers were given permission to search the home at 2702 Raskob where they found the victim's wallet and two cell phones.

Defendant ultimately confessed to the shooting. At the time of his confession, defendant was 14 years old and in seventh grade, having been held back twice. Although he acknowledged sharing a marijuana "blunt" three hours prior to the interview, defendant denied being under the influence of drugs or alcohol. Defendant initially denied any involvement and, after over an hour of questioning, Officer Shawn Ellis requested Officer Harlan Green transport defendant to the detention center. However, instead of immediately transporting defendant, Green had a conversation with defendant that was not recorded.

Green asked for an opportunity to speak with defendant. Green had been involved in a case dealing with defendant's father, Mark Anthony, Sr., who spent time in federal prison on drug charges. Green told defendant that defendant may have been one of the babies he saw

---

[2]The other individuals included Antonio Allen, Donche Thomas, and D'Courion Jamerson ("Booger"). Adrian Brown and Demario Blunt (Antonio's brother) were also fingerprinted.

on the night his father was arrested. Green testified that he spoke to defendant as a father would to his son and denied threatening defendant or defendant's family in any way. He wanted defendant to consider the fact that defendant's father was absent for most of his life and that defendant may want to have a family one day and be there for them in a way that his own father was not.

After this conversation, defendant's demeanor changed and he began to cry. Green told Ellis that defendant would like to speak with him again. During this second interview, defendant confessed to murdering Merlyne. Defendant used to see Merlyne when he walked to the bus stop. He knew she lived there by herself. Defendant was alone on the day of the murder, having walked to Merlyne's home. He knocked on the front door. Merlyne opened the door. Defendant told her he had an emergency and asked to use the phone. Merlyne was ready to help, but defendant shot her once, using a .357 revolver that he had stolen a week before when he walked into an unlocked home on Herrick Street and took it. Defendant did not know why he shot her. After shooting the victim, defendant checked the house for money and keys. Defendant took the keys to the Malibu, which were by the door. Defendant found $60 in the dresser in the living room. He also took a wallet and a cell phone. Defendant told his cousin, Antonio Allen, what happened. Defendant gave Antonio the gun and asked him to hide it. He also gave Antonio the car keys.[3]

Ellis and his partner then interviewed Antonio a second time and Antonio provided additional details. Based on the information provided, Ellis returned to 2702 Raskob and located the keys to the Malibu in a "fake" fireplace in the basement. Officers also proceeded to 3128 Raskob and found two weapons.

Information from Merlyne's credit union indicated that her debit/credit card was used after her death. In addition, a person called the credit union on several occasions for information about the

---

[3]Defendant's confession was the subject of a prior appeal in *People v. Jones*, unpublished per curiam opinion of the Court of Appeals, issued October 11, 2012 (Docket No. 308482), *lv den* 494 Mich. 852 (2013). In a split decision, this Court concluded that defendant's statement was voluntarily given in spite of defendant's young age and the fact that he did not have a parent present during the interview.

account and how to change the account's PIN. The caller was a young male and quite obviously not the victim. The number called from was 275–8517, which was defendant's cell phone number. Items purchased after Merlyne's death included an on-line purchase from Finish Line for two pairs of Nike tennis shoes. The items were billed to Merlyne's name, with a billing address of 828 Leland Street, although the shipping address was 2618 Gibson Street—defendant's address. The card was also used for at least two transactions with Page Plus to add minutes to a phone. The incoming phone number to the call center for the transactions was 6184420, another of defendant's cell phone numbers. After listening to the customer service recordings, Officer Ellis identified defendant as the caller. Merlyne's card was also used at the 7–11 store at Flushing and Ballenger.

However, in terms of physical evidence connecting defendant to the crime, only defendant's partial palm print match was lifted from the front passenger panel of the Malibu. Other items were either not tested or inconclusive. It was defendant's theory of the case that his cousin Antonio and others were responsible for Merlyne's death.

As will be discussed in Issue III, Antonio's April 12, 2011 preliminary examination transcript was then read into the record. At the time of the preliminary hearing, Antonio was 16 years old and was placed at the Lakeside Academy for Children by the Juvenile Court. On November 16 or 17, defendant called Antonio and told him to meet him at the corner because defendant was not at Antonio's "baby mama house." Defendant was in a white Malibu. Antonio asked defendant where he got the car. Defendant told Antonio what happened as they drove: "He said he shot her. I said, 'You shot who?' He said he shot her. I said, 'What'd you do that for?' And then he didn't tell me."

The following day, defendant picked up Antonio again and they went to their aunt's house on Raskob. Defendant went to the store and Antonio was in the basement when his aunt called him upstairs because the police were there. Antonio was arrested and taken to the police department for interviewing. He told them the truth—that defendant told Antonio he had taken the Malibu from the lady's house. Defendant had also shown Antonio the wallet he took from

Merlyne's house. It still had her ID in it. Defendant allowed Antonio to use Merlyne's card to reactivate his phone. The card numbers had been written on a piece of paper. Antonio also saw a .357 in the car, which the police ultimately recovered.

During cross-examination, Antonio testified that his parents were not present when police interviewed him. He sat in the police cruiser for two hours and then in a cell for an additional three hours before being questioned. Antonio found out the next day that he had been charged with open murder. Antonio was released from juvenile detention after a month. The prosecutor told Antonio that if he would "commit and take the Accessory after the Fact of the murder charge, that I can leave. And they was going to drop the Felony Firearm." Antonio anticipated spending six to nine months in juvenile detention in exchange for his testimony; he had been threatened with seven years' imprisonment if he failed to testify.

The jury found defendant guilty of first-degree felony murder, armed robbery, carjacking, entering with intent without breaking, carrying a concealed weapon, and felon-firearm. He was sentenced as outlined above.

*People v. Jones*, No.321986, 2015 WL 6161651, *1-3 (Mich. Ct. App. Oct. 20, 2105) (unpublished).

Prior to trial, Petitioner moved to suppress his confession asserting that it was involuntary due to his age, education, learning disability, lack of communication with his parents, and the conduct of the police. The trial court conducted an evidentiary hearing and ruled that the confession was voluntary under the totality of the circumstances. Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, which was granted. On appeal, the Michigan Court of Appeals agreed that the confession was voluntary and affirmed

the trial court's decision to admit the confession. *People v. Jones*, No. 308482, 2012 WL 4839858 (Mich. Ct. App. Oct. 11, 2012) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Jones*, 494 Mich. 852, 830 N.W.2d 137 (2013). Petitioner filed a motion for reconsideration, which was also denied. *People v. Jones*, 495 Mich. 855, 835 N.W.2d 583 (2013).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals asserting that the trial court erred in admitting other bad acts evidence, that the trial court erred in admitting Antonio Allen's preliminary examination testimony where the prosecution failed to exercise due diligence in securing his presence at trial, and that his sentence is disproportionate. The court denied relief on those claims and affirmed his convictions and sentence. *Jones*, 2015 WL 6161651 at *4-15. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Jones*, 499 Mich. 884, 876 N.W.2d 555 (2016).

Petitioner thereafter filed his federal habeas petition raising the same claims presented to the state courts on interlocutory and direct appeal. Respondent filed an answer to the petition contending that it should be denied for lack of merit.

## III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal

courts must use when considering habeas petitions brought by prisoners

challenging their state court convictions.  The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim--
>
> (1)    resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established Federal law,
>        as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
>        determination of the facts in light of the evidence presented
>        in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it

'applies a rule that contradicts the governing law set forth in [Supreme Court

cases]' or if it 'confronts a set of facts that are materially indistinguishable from a

decision of [the Supreme] Court and nevertheless arrives at a result different from

[that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*,

535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of

§ 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what

arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*; *see also White v. Woodall*, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a

state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, _ U.S. _ 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this

presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. <u>Analysis</u>

### A. <u>Involuntary Confession Claim</u>

Petitioner first asserts that he is entitled to habeas relief because his confession to police was involuntary and the trial court erred in denying his motion to suppress his confession and admitting it into evidence at trial. The Michigan Court of Appeals described the relevant facts for this issue, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); *Wagner*, 581 F.3d at 413, as follows:

> Defendant was arrested at his home in Flint, Michigan, in connection with the alleged robbery and homicide of Merlyne Wray. Defendant was 14 years old and in seventh grade at the time of his arrest. Flint Police Sergeant Shawn Ellis began an interview with defendant at the police station at around 2:30 a.m. on November 18, 2010. Ellis later introduced defendant to Sergeant Brett Small when Small joined the interview. Ellis read defendant his *Miranda* rights prior to the interrogation, although defendant testified that he did not remember being read his rights. Defendant waived his rights and stated that he did not need an attorney present to speak with Ellis and Small. The first part of the interrogation lasted approximately one hour and thirty minutes. According to Ellis, defendant responded to the questioning but was cold, defiant, uncooperative, and lying during this part of the interview. At about 3:50 a.m. Ellis gave up on the interview because he felt that defendant was not cooperating or telling the truth. Ellis ended the interview and informed defendant that he was going to jail for carjacking and homicide. Ellis, Small, and defendant exited the

interview room, and Ellis turned defendant over to police officer Harlan Green and then proceeded to his office.

Green then talked to defendant in the hallway. According to defendant, Green told defendant that if he did not "let them know what happened, whatever, you know, send my dad back to prison, send my mom to jail." Defendant testified that he believed Green. However, according to Green, Green told defendant that he needed to cooperate, be truthful, and tell the whole story. He told defendant that he knew defendant's mother and father. He told defendant that he had arrested defendant's father and sent him to prison. Green told defendant that defendant may not have a relationship with his father because of the crime his father had committed, and that one day defendant would want to be a man and have a family and not be locked up for the rest of his life. Green did not yell at defendant; he talked to defendant as if he were talking to his own child. Green saw defendant's demeanor change. Defendant started being remorseful and began to cry. Green then asked defendant if he wanted to speak to Ellis. Defendant nodded and indicated that he did want to talk to Ellis. Green had talked with defendant for approximately 5 to 10 minutes. Green then walked over to Ellis's office without defendant and informed Ellis that defendant wanted to now talk. Ellis went over to talk to defendant; defendant was crying. Ellis asked defendant if he wanted to talk to him now and if he was going to tell the truth, which defendant answered affirmatively. Ellis, Small, and defendant then proceeded back into the interview room, where defendant confessed to shooting Wray and stealing her money and car.

Before trial, defendant filed an amended motion to suppress statements and request for a *Walker* hearing and a brief in support of the motion. Defendant argued that his confession to police could not be considered voluntary given "his age, educational background, learning disability, his inability to speak with his parents, as well as the conduct of the police...." The trial court held an extensive *Walker* hearing regarding defendant's interrogation and confession and concluded that defendant's confession was voluntary under the totality of the circumstances.

*Jones*, 2012 WL 4839858 at *1-2.

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Those circumstances include: (1) police coercion (a "crucial element"), (2) length of interrogation, (3) location of interrogation, (4) continuity of interrogation, (5) suspect's maturity, (6) suspect's education, (7) suspect's physical and mental condition, and (8) whether the suspect was advised of *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

All of the factors should be closely scrutinized, *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961), but without coercive police activity, a confession should not be deemed involuntary. *See Connelly*, 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"). To constitute

14

coercion, the police conduct must overbear the suspect's will to resist. *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994) (citing *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976)). An involuntary confession may result from psychological, as well as physical, coercion or pressure by the police. *Arizona v. Fulminante*, 499 U.S. 279, 285-89 (1991). A petitioner has the burden of proving that a statement is involuntary. *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987).

In juvenile cases, the totality of the circumstances approach requires an "evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Fare v. Michael C.*, 442 U.S. 707, 725 (1979) (citing *North Carolina v. Butler*, 441 U.S. 369 (1979)). The Supreme Court has spoken of the need to exercise "special caution" when assessing the voluntariness of a juvenile confession, particularly when there is prolonged or repeated questioning, or when the interrogation occurs in the absence of a parent, lawyer, or other friendly adult. *In re Gault*, 387 U.S. 1, 45 (1967); *Gallegos v. Colorado*, 370 U.S. 49, 55 (1962); *Haley v. Ohio*, 332 U.S. 596, 599-601 (1948).

The Michigan Court of Appeals reviewed this claim on interlocutory appeal, considered the totality of the circumstances, and concluded that

Petitioner's confession to police was voluntary and admissible at trial. *Jones*,

2012 WL 4839858 at *2-5. The court considered the following factors:

> (1) whether the requirements of *Miranda v. Arizona*, 384 U.S. 436;
> 86 S.Ct. 1602; 16 L.Ed.2d 694 (1966), have been met and the
> defendant clearly understands and waives those rights, (2) the degree
> of police compliance with MCL 764.27; MSA 28.886 and the
> juvenile court rules, (3) the presence of an adult parent, custodian, or
> guardian, (4) the juvenile defendant's personal background, (5) the
> accused's age, education, and intelligence level, (6) the extent of the
> defendant's prior experience with the police, (7) the length of
> detention before the statement was made, (8) the repeated and
> prolonged nature of the questioning, and (9) whether the accused was
> injured, intoxicated, in ill health, physically abused or threatened
> with abuse, or deprived of food, sleep, or medical attention.

*Id.* at 2. The court found that factors one, two, six, seven, eight, and nine

weighed in the prosecution's favor and that factors three, four, and five weighed

in Petitioner's favor. The court further agreed with the trial court's determination

that Petitioner's confession was the product of his own free choice and that his

will was not overborne by Officer Green's statements. *Id.* at *3-5.

The state court's decision is neither contrary to Supreme Court precedent

nor an unreasonable application of federal law or the facts. As discussed by the

Michigan Court of Appeals, certain factors clearly weigh against a finding that the

confession was voluntary. First, Petitioner was only 14 years old, was in the

seventh grade, was found to be of low average intelligence, and came from a

disadvantaged background. Second, Petitioner's parents were not present during

the interrogation. Third, the interrogation took place at the police station and was conducted during the middle of the night. Other factors, however, weigh in favor of finding that the confession was voluntary. First, the interrogation began less than six hours after Petitioner's arrest and the total interrogation time was about two hours with a short break when the officers left the room and another break in questioning when Officer Green spoke with Petitioner in the hallway. Second, while Petitioner may have been tired during the interrogation, he was otherwise in good physical and mental condition, was not physically harmed by the police, and was not deprived of food, water, or other necessities. Third, Petitioner was advised of his *Miranda* rights, agreed to speak with the police, and did not request his parents or a lawyer. Fourth, although Petitioner was young, he had significant experience with the police, starting at the age of eight, with prior arrests and interrogations that included the reading of his *Miranda* rights, and was on probation at the time of the crime. Fifth, Petitioner was aware of the serious nature of the charges, which included murder and carjacking, at the time of the interrogation.

The more disputed factor is whether the police conduct during the interrogation was coercive. During the first part of the interrogation, the police used customary police tactics, such as telling Petitioner to be a man, that they had overwhelming evidence against him, and that he should confess for the sake of his

family, to encourage Petitioner to admit his involvement in the crime. The Supreme Court and other federal courts have held that officers may deceive suspects through appeals to a suspect's conscience, by posing as a false friend, and by other means of trickery and bluff. *See, e.g., Procunier v. Atchley*, 400 U.S. 446, 453-54 (1971) (suspect was deceived into confessing to false friend to obtain insurance payout to children); *Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (deceiving suspect about another suspect's confession); *Ledbetter v. Edwards*, 35 F.3d 1062, 1069-70 (6th Cir. 1994) (petitioner's confession was voluntary even though officers told him lies to induce his statements); *United States v. Harrison*, 34 F.3d 886, 891 (9th Cir.1994) (police permitted to "suggest that cooperation may increase the likelihood of a more lenient sentence"). Moreover, such statements did not overcome Petitioner's will – Petitioner continued to proclaim his innocence despite the officers' statements.

It was only after Petitioner spoke with Officer Green in the hallway that he confessed to the crime. It was thus reasonable for the Michigan Court of Appeals to focus on the effect of that conversation. At the evidentiary hearing, Officer Green and Petitioner gave different accounts of that conversation. Officer Green testified that he told Petitioner that he should cooperate, that he knew Petitioner's parents and had arrested his father, and that one day Petitioner would want to be a man, have a family, and not be in prison for the rest of his life. Petitioner, in

contrast, testified that Officer Green threatened to send his dad back to prison and his mom to jail if he did not tell them what happened. The Michigan Court of Appeals noted that the trial court did not make a specific determination about whose version was more credible but the trial court did find that Officer Green's statements were "threatening." Arguably, Officer Green's statements were somewhat coercive such that this factor weighs against a finding that Petitioner's confession was voluntary.

The answer to the question of whether Petitioner voluntarily confessed to police ultimately depends on which set of competing facts a court chooses to give greater weight. In this case, the Michigan Court of Appeals considered the relevant circumstances and ultimately agreed with the trial court that Petitioner's confession was the product of his own free will because Officer Green's comments about Petitioner's ability to grow up, have a family, and have some kind of life "hit a nerve" with Petitioner and the confession was not the result of any threats by Officer Green. This conclusion was reasonable.

In sum, the Michigan Court of Appeals considered the totality of the circumstances and came to a reasonable conclusion that Petitioner's confession was voluntary. While this Court may have reached a different conclusion had it considered the case on direct appeal, that is not the standard on habeas review. *See, e.g., Williams*, 529 U.S. at 411 (a federal habeas court "may not issue the writ

simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"); *Hill v. Anderson*, 881 F.3d 483, 507-08 (6th Cir. 2018) (affirming district court's ruling that petitioner voluntarily waived his *Miranda* rights due to the deference accorded state courts on habeas review while expressing "consternation" with the result).  Habeas relief is not warranted on this claim.

### B.  Admission of Other Acts Evidence Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting other bad acts evidence, namely two other incidents involving the targeting of elderly individuals at their homes and stealing their personal items.  Respondent contends that this claim is not cognizable and that it lacks merit.

A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  "Trial court errors in state procedure or evidentiary law do not rise to the level of federal

constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals denied relief on this claim finding that the evidence was admitted for the proper purpose of showing a common system, that the evidence was relevant to show Petitioner's modus operandi of targeting elderly victims, that the probative value outweighed the potential for unfair prejudice. The court also noted that the trial court instructed the jury on the proper consideration of the evidence. *Jones*, 2015 WL 6161651 at *3-6.

The state court's denial of relief on this claim is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner asserts that the trial court erred in admitting evidence under Michigan law, he merely alleges violations of state law which do not justify federal habeas relief. *See, e.g., Bey*, 500 F.3d at 519. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76

(2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68.

Second, Petitioner fails to establish that the admission of the other acts evidence resulted in a federal due process violation. As to the admission of other acts evidence, the United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352–53 (1990). Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513; *Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Petitioner thus fails to state a claim upon which habeas relief may be granted as to such matters.

Moreover, even if Petitioner states a cognizable claim as to the other acts evidence, he is not entitled to relief. He fails to show that the admission of the other acts evidence rendered his trial fundamentally unfair. The other acts evidence was relevant and admissible on the issue of Petitioner's common plan or system of preying on elderly victims and taking their property. The prosecution argued as much at trial. Furthermore, the risk of unfair prejudice was mitigated by

22

the fact that the trial court instructed the jury on the proper consideration of the evidence. Jurors are presumed to follow the court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it."). Petitioner fails to show that the admission of the other acts evidence was erroneous or, more importantly for purposes of habeas review, that it rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

### C.    Admission of Prior Testimony and Due Diligence Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in admitting Antonio Allen's prior preliminary examination testimony where the prosecution failed to exercise due diligence in attempting to secure his presence at trial. Respondent contends that this claim is not cognizable in part and that it lacks merit.

As discussed, a federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal law does not require the production of so-called res gestae witnesses. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). Michigan law's requirement that the prosecutors produce res gestae witnesses constitutes a matter of state law whose enforcement is beyond

the scope of federal habeas review. *Collier v. Lafler*, 419 F. App'x 555, 559 (6th Cir. 2011); *see also Estelle*, 502 U.S. at 67-68. "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F.2d 192 (Table), 1988 WL 87710, *2 (6th Cir. Aug. 24, 1988) (citing *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972)). Petitioner neither alleges nor establishes that Antonio Allen would have provided exculpatory testimony - and the record indicates the opposite. Thus, whether the prosecutor exercised due diligence in attempting to locate Antonio Allen and produce him at trial is a state law issue outside the scope of federal habeas review. *Collier*, 419 F. App'x at 559. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328; *see also Bradshaw v. Richey*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860.

Petitioner, however, also asserts a violation of his confrontation rights. The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him or her. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1973). In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the United States Supreme Court held that

24

the testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. The proper inquiry for deciding whether a statement is testimonial is "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2005). Testimonial statements include preliminary hearing testimony, grand jury testimony, prior trial testimony, and statements made during police interrogations. *Crawford*, 541 U.S. at 54.

The Supreme Court has found no Confrontation Clause violation by the admission of an unavailable witness's prior testimony when there was an opportunity for cross-examination at the prior proceeding. *See Mattox v. United States*, 156 U.S. 237 (1895) (prior trial testimony); *Barber v. Page*, 390 U.S. 719, 725-26 (1968) (preliminary hearing testimony). A witness is 'unavailable' for purposes of the exception to the confrontation requirement if the prosecution has made a good faith effort to obtain the witness's presence at trial. *Barber*, 390 U.S. at 724-25; *Winn v. Renico*, 175 F. App'x 728, 733 (6th Cir. 2006). "The lengths to which the prosecution must go to produce a witness, however, is a question of reasonableness." *Winn*, 175 F. App'x at 733 (citing *California v. Green*, 399 U.S. 149, 189, n. 22 (1970) (concurring opinion, citing Barber)). "The ultimate

question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness....The prosecution bears the burden of proof in this regard. *Id*. (citations omitted).

The Michigan Court of Appeals considered this claim and denied relief. The court found that the prosecution made reasonable efforts to locate and produce Antonio Allen. The court did not specifically address the confrontation issue, but did note the trial court's finding Petitioner had sufficient opportunity to question Antonio Allen at the preliminary examination. *Jones*, 2015 WL 6161651 at *6-8 (citations omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts – and the Court would reach the same result under a *de novo* standard of review (particularly as to the confrontation issue which was not clearly addressed on appeal). First, the prosecuting authorities made reasonable efforts to produce Antonio Allen to testify at trial. The police visited several addresses, including the residence where the mother of Petitioner's child lived, the residence where Petitioner's cousin had lived, and the aunt's house where Petitioner had been arrested. They also rechecked some locations every few days. The police conducted a LEIN search, learned that Antonio Allen had outstanding warrants, checked the local jail daily, and contacted his attorney of record. The police were unable to obtain any

telephone numbers for Antonio Allen or his mother. Such efforts, although unsuccessful, were duly diligent. Antonio Allen was thus unavailable for purposes of Petitioner's trial.

The record further indicates that Petitioner had the same motive and opportunity for questioning Antonio Allen at the preliminary examination and that defense counsel took advantage of that opportunity. *See* 4/12/11 Prelim. Ex. Tr., pp. 87-105. Because Antonio Allen was unavailable at the time of trial and Petitioner had ample opportunity to cross-examine him at the preliminary examination, the trial court did not violate Petitioner's confrontation rights by admitting his prior preliminary examination testimony into evidence at trial. Habeas relief is not warranted on this claim.

### D. <u>Sentencing Claim</u>

Lastly, Petitioner asserts that he is entitled to habeas relief because his first-degree murder sentence of 40 to 60 years imprisonment is disproportionate. Respondent contends that this claim is not cognizable and that it lacks merit.

Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner's first-degree murder sentence of 40 to 60 years imprisonment is within the statutory

maximum for a juvenile convicted of first-degree murder. *See* Mich. Comp. Laws §§ 750.316(1)(b); 769.25(4) (requiring a court to impose a term of years sentence if the prosecutor declines to file a motion seeking a non-parolable life sentence); 769.25(9) (requiring the court to impose a minimum sentence of at least 25 years and up to 40 years imprisonment with a maximum of 60 years imprisonment). A sentence imposed within the statutory limit is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Lucey*, 185 F. Supp. 2d at 745; *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

The Michigan Court of Appeals reviewed relevant federal and state law governing sentencing for juvenile offenders convicted of first-degree murder and denied relief on this claim. The court found that the trial court conducted an extensive sentencing hearing and reviewed numerous documents, reviewed various sentencing factors including Petitioner's age, education, criminal history, family situation, character, and potential for rehabilitation, and concluded that the trial court appropriately declined to sentence Petitioner to life without parole and imposed a reasonable sentence based upon Petitioner's deliberate and calculated actions in committing the crime. *Jones*, 2015 WL 6161651 at *9-15.

The state court's decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner asserts that his sentence is disproportionate or

otherwise invalid under state law, he fails to state a claim for federal habeas relief. *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000).  There is no federal constitutional right to individualized sentencing.  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).  As discussed, state courts are the final arbiters of state law and the federal courts will not intervene in such matters.  *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328; *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860.  Habeas relief does not lie for perceived state law errors.  *Estelle*, 502 U.S. at 67-68.

Second, Petitioner is not entitled to relief on any claim that his first-degree murder sentence constitutes cruel and unusual punishment under the Eighth Amendment.  The United States Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin*, 213 F.3d at 302 (internal citation omitted).  Petitioner's sentence is within the statutory maximum for a juvenile offender convicted of first-degree murder in Michigan.  The state trial court acted within its discretion in imposing Petitioner's sentence and there is no extreme disparity between his crime and sentence so as to offend the Eighth Amendment.  Petitioner fails to show that his first-degree murder sentence is unconstitutional.  Habeas relief is not

warranted on this claim.

**V.     Conclusion**

For the reasons stated, the Court concludes that Petitioner's claims lack merit and that he is not entitled to federal habeas relief.  Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Having conducted the requisite review, the Court concludes that Petitioner makes a substantial showing of the denial of a constitutional right as to his claim challenging the voluntariness of his confession, but fails to make such a showing as to his other claims.  Accordingly, the Court **GRANTS** a certificate of

appealability on Petitioner's claim concerning the voluntariness of his confession, but **DENIES** a certificate of appealability as to his other claims.  Given this determination, the Court **GRANTS** Petitioner leave to proceed in forma pauperis on appeal as an appeal can be taken in good faith.  *See* Fed. R. App. P. 24(a).  This case is **CLOSED**.

      **IT IS SO ORDERED**.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  July 24, 2018

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 24, 2018.


s/Deborah Tofil
Case Manager